**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25-cv-14252 |
| | ) | Honorable Sunil R. Harjani |
| DERRICK GRAVES, | ) ) | |
| | ) | AMENDED COMPLAINT |
| Plaintiff-Intervenor, | ) ) | JURY TRIAL DEMAND |
| v. | ) ) | |
| ANTHONY ROOFING TECTA AMERICA LLC, and TECTA AMERICA CORP., | ) ) ) ) | |
| Defendants. | ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the bases of race, sex, and retaliation and to provide appropriate relief to aggrieved individuals who were adversely affected by such practices. As alleged with greater particularity below Defendants, Anthony Roofing Tecta America LLC ("Anthony Roofing") and Tecta America Corp. ("Tecta America") (collectively "Defendants") discriminated against a class of Black employees, including Plaintiff Intervenor Derrick Graves, and a class of female employees ("Aggrieved Individuals") when they subjected them to a hostile work environment based on race or sex, and constructively discharged one employee in retaliation for his complaints about the race harassment. All the alleged conduct was in violation of Title VII.

JURISDICTION AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343

1

and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and 706(f)(3) of Title VII, as amended, 42 U.S.C. § 2000e-5(f)(1) and § 2000e-5(f)(3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Illinois.

3. Plaintiff United States Equal Employment Opportunity Commission ("EEOC" or "Commission") is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and 706(f)(3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and 2000e-5(f)(3).

4. Defendants operate a roofing business.

5. Tecta America is a nationwide roofing company that conducts business through a network of subsidiaries.

6. Anthony Roofing is a subsidiary of Tecta America.

7. At all relevant times, Tecta America has continuously been a corporation doing business in the State of Illinois, with its corporate headquarters in Rosemont, Illinois.

8. At all relevant times, Anthony Roofing has continuously been a corporation doing business in Aurora, Illinois.

9. At all relevant times, Tecta America has continuously had at least 15 employees.

10. At all relevant times, Tecta America has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

11. At all relevant times, Anthony Roofing has continuously had at least 15 employees.

2

12. At all relevant times, Anthony Roofing has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

13. Tecta America and Anthony Roofing operate as one company, such that they are properly treated as a single employer for purposes of this action. For example:

a) Anthony Roofing is a unit of Tecta America;

b) Tecta America transfers, shares, and promotes employees between its different units;

c) Intervenor Plaintiff Derrick Graves's employment application and new hire orientation forms, as well as policies that he signed upon hire, named Tecta America Corp. as the employer;

d) Upon information and belief, Tecta America paid Intervenor Plaintiff Derrick Graves throughout his employment;

e) The president of Anthony Roofing, Tony Clausen, reports to the Chief Operating Officer of Tecta America, Todd Stugelmayer, who is Clausen's direct manager;

f) Tecta America selected Clausen to be the president of Anthony Roofing and stated that it had "promoted" him to the position of "Operating Unit President at Anthony Roofing" when it announced the selection;

g) Tecta America provides employee training on project management, estimating, and safety for Anthony Roofing employees;

h) Tecta America provides pricing estimates for work to be performed by Anthony Roofing;

i) Tecta America controls Anthony Roofing's monthly reporting, tracking and

3

recordkeeping of finances and accounting;

j) Anthony Roofing employees have profit sharing through Tecta America;

k) Payroll functions for both entities are conducted by Tecta America;

l) Tecta America controls Anthony Roofing's information technology;

m) Tecta America provides human resources services for Anthony Roofing, including setting personnel policies;

n) Anthony Roofing's Human Resources policy indicates that employees may report complaints of discrimination or harassment at Anthony Roofing directly to Tecta America; and

o) Tecta America is responsible for addressing complaints of race and sex harassment at Anthony Roofing.

<u>ADMINISTRATIVE PROCEDURES</u>

14. More than thirty days prior to the institution of this lawsuit, EEOC Charge No. 440-2022-06889 ("Charge") was filed with the Commission alleging violations of Title VII by Anthony Roofing.

15. Tecta America was aware of the Charge, participated in the investigation, and knew that actions of Tecta America's Human Resources department were at issue in the Charge. For example:

a) Tecta America was mentioned by name in the Charge;

b) Upon receiving the Charge, Anthony Roofing notified Tecta America's Vice President of Human Resources, Bonnie Ogden, which is Anthony Roofing's practice for handling EEOC charges;

c) Tecta's Vice President of Human Resources, Bonnie Ogden, was interviewed by

4

the EEOC investigator during the investigation of the Charge;

d) During her interview with the EEOC investigator, Tecta America's Vice President of Human Resources was represented by the same attorney who has represented Anthony Roofing in connection with the investigation of the Charge, during conciliation, and presently.

16. On May 16, 2025, the Commission issued to Anthony Roofing a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII by discriminating against a class of Black employees by subjecting them to a hostile work environment based on race; discriminating against a class of female employees by subjecting them to a hostile work environment based on sex; and constructively discharging a Black employee in retaliation for opposing the racial harassment.

17. Through the Letter of Determination, which was sent to Defendants' counsel, the Commission invited Anthony Roofing to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

18. The Commission engaged in communications with Anthony Roofing to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

19. The Commission was unable to secure from Anthony Roofing a conciliation agreement acceptable to the Commission.

20. Tecta America was aware of the conciliation efforts.

21. On July 2, 2025, the Commission issued to Defendants' counsel a Notice of Failure of Conciliation.

22. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

23. Since at least November 2019, Defendants engaged in unlawful employment practices at their Aurora, Illinois facility and at worksites where their employees were working, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Aggrieved Individuals who are Black to harassment because of their race. In particular:

24. Defendants subjected Aggrieved Individuals who are Black to harassment based on race, including frequent racial slurs such as "n*gger" and racially offensive comments. For example, an Anthony Roofing vice president ("Vice President") routinely called a Black employee, Plaintiff Intervenor Derrick Graves, "n*gger" and "slave," and told him they did not want his "Black ass" in a meeting.

   a) The Vice President had the power to hire, fire, demote, promote, reassign, and discipline employees at Anthony Roofing.

25. Other supervisory and nonsupervisory employees also routinely engaged in racial harassment of Black employees, calling them "n*gger," "Black Motherfuc*er," and "boy."

26. The Aggrieved Individuals reported the racial harassment to their supervisors, to the president of Anthony Roofing, and to Tecta America's Human Resources department, including directly to Tecta America's Director of Human Resources, Bonnie Ogden.

27. Defendants did not take reasonable steps to stop or prevent the racial harassment. For example, after Plaintiff Intervenor Derrick Graves reported racial harassment to Tecta America's Director of Human Resources, Bonnie Ogden, she visited the work site but failed to even talk to him about his report and took no remedial action on his complaint.

After another individual objected to racial harassment, one of Defendants' managers instructed him and other employees not to make any complaints to outside agencies.

a) Despite multiple reports of racial harassment to Defendants, the harassment continued.

28. Since at least November 2019, Defendants engaged in unlawful employment practices at their Aurora, Illinois facility and at worksites where their employees were working, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Aggrieved Individuals who are women to harassment because of their sex.

29. In particular, Defendants subjected Aggrieved Individuals who are women to repeated and offensive sex-based comments in the workplace. For example:

a) The Vice President of Anthony Roofing routinely made sexual comments about female employees' bodies, including telling one employee that her "ass looks very big in jeans" and asking another if she was "pregnant or just fat." He also made sexually inappropriate comments regarding "blow jobs" in the conference room and asked employees about their sexual relationships. Likewise, he made demeaning comments about women stating that women did not have a place in the office.

b) As alleged above, the Vice President was empowered to take tangible employment actions with respect to employees at Anthony Roofing, such as hiring and firing.

30. Defendants were aware of the sexual harassment. For example, Aggrieved Individuals reported the sexual harassment to Tecta America's Human Resources department, including directly to Tecta America's Director of Human Resources, Bonnie Ogden.

a) Defendants did not take reasonable steps to stop or prevent the sexual harassment. For example, after one employee told Tecta America's Director of Human

Resources about the sexual harassment alleged above, the Director of Human Resources told the employee that nothing could be done, and the harassment continued.

31. Since at least November 2019, Defendants engaged in unlawful employment practices at their Aurora, Illinois facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by constructively discharging one of the Aggrieved Individuals in retaliation for his complaints about the racial harassment alleged above. The egregious nature of the harassment, which included threats and at least one instance of unwelcome physical contact, combined with Defendants' refusal to address the harassment and the harasser's statement to the Aggrieved Individual that "what you say or feel doesn't matter" and that "you might as well put your two weeks [notice] in," created working conditions that a reasonable person would find intolerable.  As a result, the Aggrieved Individual resigned.

32. The effect of the practices complained of above has been to deprive the Aggrieved Individuals of equal employment opportunities and otherwise adversely affect their status as employees because of race or sex or retaliation.

33. The unlawful employment practices complained of above were intentional.

34. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Aggrieved Individuals.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from

engaging in any employment practices which discriminate because of race or sex in violation of Title VII.

B. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from retaliating against employees who oppose practices made unlawful by Title VII.

C. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for their employees regardless of race or sex, and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendants to make whole the Aggrieved Individual who was subjected to retaliatory constructive discharge, by providing appropriate backpay, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement.

E. Order Defendants to make whole the Aggrieved Individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F. Order Defendants to make whole the Aggrieved Individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, humiliation, and inconvenience, in amounts to be determined at trial.

G. Order Defendants to pay the Aggrieved Individuals who were subjected to the unlawful practices alleged above punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial.

H.  Order Defendants to pay prejudgment interest.

I.  Grant such further relief as the Court deems necessary and proper in the public interest.

J.  Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint that do not relate solely to equitable relief.

Dated March 31, 2026

<div style="margin-left: 45%;">

Catherine L. Eschbach
Acting General Counsel
Equal Employment Opportunity Commission
131 M Street, N.E., 5th Floor
Washington, D.C. 20507

Gregory Gochanour
Regional Attorney
EEOC Chicago District Office
230 South Dearborn Street, Ste. 2920
Chicago, IL 60604
Email: gregory.gochanour@eeoc.gov

Justin Mulaire
Assistant Regional Attorney
EEOC Chicago District Office
230 South Dearborn Street, Ste. 2920
Chicago, IL 60604
Email: justin.mulaire@eeoc.gov

/s/ Leslie N. Carter
Senior Trial Attorney
EEOC Milwaukee Area Office
310 W. Wisconsin Avenue, Suite 500
Milwaukee, WI 53208
Telephone: (414) 662-3711
Email: leslie.carter@eeoc.gov

/s/ Tina Burnside
Tina Burnside (WI #1026965)
Senior Trial Attorney

</div>

10

EEOC Minneapolis Area Office
330 Second Avenue South, Suite 720
Minneapolis, Minnesota 55401
Telephone: (612) 552-7319
Email: tina.burnside@eeoc.gov